# In the United States Court of Federal Claims

No. 01-720T

Filed: March 30, 2012

**TO BE PUBLISHED**

*******************************************

| | | |
|---|---|---|
| | * | |
| | * | AMCOR Partnership; |
| RICHARD E. DAHLBERG, | * | Federal Income Tax Partnerships; |
| | * | Final Partnership Administrative |
| and | * |    Adjustment; |
| | * | Interest on a Tax Motivated |
| HEATHER H. DAHLBERG, | * |    Transaction, 26 U.S.C. § 6621(c)(1); |
| | * | Sham Transactions; |
|     Plaintiffs, | * | Statute of Limitations, 26 U.S.C. |
| | * |    §§ 6501, 6229; |
|    v. | * | Subject Matter Jurisdiction, RCFC |
| | * |    12(b)(1). |
| THE UNITED STATES, | * | |
| | * | |
|     Defendant. | * | |
| | * | |
| | * | |

*******************************************

**Thomas E. Redding**, Redding & Associates, P.C., Houston, Texas, Counsel for Plaintiffs.

**Paul George Galindo**, United States Department of Justice, Tax Division, Washington, D.C., Counsel for Defendant.

### MEMORANDUM OPINION AND FINAL ORDER

**BRADEN,** *Judge.*

      This case presents jurisdictional issues relevant to federal income tax refund cases concerning partnerships. These issues are familiar to the court and the United States Court of Appeals for the Federal Circuit. *See*, *e.g.*, *Keener* v. *United States*, 76 Fed. Cl. 455 (2007) ("*Keener I*"), *aff'd*, 551 F.3d 1358 (Fed. Cir. 2009) ("*Keener II*"); *see also Prati* v. *United States*, 81 Fed. Cl. 422 (2008) ("*Prati I*"), *mot. to recons. denied*, 82 Fed. Cl. 373 (2008) ("*Prati II*"), *aff'd*, 603 F.3d 1301 (Fed. Cir. 2010) ("*Prati III*").

I.  **RELEVANT FACTS.**[1]

In 1985, Richard and Heather Dahlberg ("Plaintiffs") invested in USB-1985 Associates, a limited partnership managed by American Agri-Corp, Inc. ("AMCOR"), wherein the partners advanced farming expenses to farmers and then deducted those expenses from their individual federal income taxes. Compl. ¶ 6; Pl. Resp. Ex. 5; *see also Prati I*, 81 Fed. Cl. at 425. Effectively, "by participating in an AMCOR partnership, an investor could obtain what amounted to an interest-free loan from the [federal] government for the unpaid portion of [the investor's] taxes." *Prati I*, 81 Fed. Cl. at 426.

In 1987, the Internal Revenue Service ("IRS") began investigating AMCOR partnerships. *See Prati III*, 603 F.3d at 1302. On April 10, 1991, the IRS issued a Notice of Final Partnership Administrative Adjustments ("FPAA") to USB-1985 Associates disallowing the claimed deductions, because, among other reasons, "[t]he partnership's activities constitute[d] a series of sham transactions." Pl. Resp. Ex. 2 at 38. The FPAA also informed USB-1985 Associates' partners that they could settle their individual tax liability by executing a Form 870-P, advising:

> If you want to enter into a binding agreement to treat the partnership items consistently with the treatment of the items on the partnership return as modified by the FPAA, please sign and return the enclosed Form 870-P. Signing and returning Form 870-P constitutes a settlement offer by you. If the Commissioner accepts your offer of agreement, the treatment of the partnership items of the partnership under the agreement will be binding and will not be affected by any later judicial determination.

Pl. Resp. Ex. 2 at 33.

On July 10, 1991, an unidentified USB-1985 Associates partner filed a petition in the United States Tax Court contesting the FPAA.[2] Pl. Resp. Ex. 1 at 6; Pl. Resp. Ex. 4 at 45. Other AMCOR partnerships also filed suits in that forum. *See Prati III*, 603 F.3d at 1302 ("Representatives of the [AMCOR] partnerships challenged the FPAA disallowances in partnership-level proceedings before the Tax Court[.]").

In June 1997, Plaintiffs signed a Form 870-P(AD), that was accepted by the IRS on July 17, 1997, as "a settlement agreement with respect to the determination of partnership items of the [USB-1985 Associates] partnership for [the tax year ended 1985]." Pl. Resp. Ex 5 at 53.

---

[1] The relevant facts recited herein are derived from: the December 28, 2001 Complaint ("Compl.") and Exhibits A-C, attached thereto; and Plaintiffs' October 24, 2011 Response To Defendant's Motion To Dismiss ("Pl. Resp.") and Exhibits 1-11, attached thereto.

[2] The Tax Matters Partner ("TMP") for USB-1985 Associates, Frederick H. Behrens, intervened in the Tax Court case in July 1999. Pl. Resp. Ex. 1 at 6; *see also Prati I*, 81 Fed. Cl. 426 n.10 ("The TMP is a person or entity designated as such by the partnership under applicable regulations[.]" (citing 26 U.S.C. § 6231(a)(7)). Mr. Behrens was the TMP for all but two of the AMCOR partnerships. Pl. Resp. Ex. 1 at 1.

Plaintiffs also "waive[d] the restrictions on the assessment and collection of any deficiency attributable to partnership items (with interest as required by law) provided in section 6225(a)." Pl. Resp. Ex. 5 at 53.  Furthermore, the Form 870-P(AD) provided that "the treatment of partnership items under this agreement will not be reopened in the absence of fraud, malfeasance, or misrepresentation of fact; and no claim for refund or credit based on any change in the treatment of partnership items may be filed or prosecuted." Pl. Resp. Ex. 5 at 53.

On December 1, 1997, the IRS notified Plaintiffs that they owed $77,929.82, *i.e.*, $21,382.00 in federal income taxes and $56,547.82 in interest, assessed under 26 U.S.C. § 6221(c)[3].  Pl. Resp. Ex. 6 at 66, 68.  On December 23, 1997, Plaintiffs paid the total amount owed.  Pl. Resp. Ex. 6 at 67.  On July 13, 1999, Plaintiffs filed a refund claim with the IRS.  Pl. Resp. Ex. 6 at 55.  On December 30, 1999, the IRS disallowed this claim.  Pl. Resp. Ex. 8.

On July 19, 2001, the Tax Court entered a stipulated decision in the USB-1985 Associates Tax Court case (the "Stipulated Decision") negotiated by the TMP and the IRS.  Pl. Resp. Ex. 1 at 2-3; Pl. Resp. Ex. 10.  On that same date, other AMCOR partnerships also entered into stipulated decisions settling their Tax Court actions.  *See Prati III*, 603 F.3d at 1303.

## II.   PROCEDURAL HISTORY.

On December 28, 2001, Plaintiffs filed a Complaint in the United States Court of Federal Claims, seeking a refund of the $77,929.82 payment made for the 1985 tax year, because:

- The IRS assessed taxes after the statute of limitations period expired.  Compl. ¶¶ 12.A-B (the "statute of limitations claim");

- The IRS improperly imposed interest at the penalty rate under 26 U.S.C. § 6621(c).  Compl. ¶¶ 12.C-E (the "penalty interest claim"); and

- The IRS should have abated interest under 26 U.S.C. § 6404(e).  Compl. ¶ 12.F (the "interest abatement claim").

This case was assigned to the Honorable John P. Wiese.  On May 15, 2002, the Government filed an Answer.  On October 11, 2002, the parties filed a Joint Notice Of Indirectly-Related Cases that identified 23 indirectly related cases[4] also alleging the aforementioned claims, and suggested that the parties select representative cases to resolve

---

[3] The United States Court of Appeals for the Federal Circuit has described Section 6621(c), as "impos[ing] an interest rate of 120% of the statutory rate on 'any substantial underpayment attributable to tax motivated transactions.'" *Keener II*, 551 F.3d at 1364 (quoting 26 U.S.C. § 6621(c)(1)) (footnote omitted).  In addition, "[t]he statute defines a 'tax motivated transaction' to include 'any sham or fraudulent transaction.'" *Id.* at 1365 (quoting 26 U.S.C. 6621(c)(3)(A)(v)).

[4] By May 5, 2010, 129 AMCOR-related tax refund suits had been filed in the United States Court of Federal Claims.  *See Prati III*, 603 F.3d at 1303.

"preliminary legal issues." On January 8, 2003, the parties filed a Joint Notice Of Representative Cases requesting that this case be stayed, pending the adjudication of three representative cases: *Isler* v. *United States*, No. 01-344; *Scuteri* v. *United States*, No. 01-358; and *Prati* v. *United States*, No. 02-60. On February 4, 2003, the court stayed this case.[5]

On May 21, 2007, the United States Supreme Court in *Hinck* v. *United States*, 550 U.S. 501 (2007), held that "the Tax Court provides the exclusive forum for judicial review of a refusal to abate interest under § 6404(e)(1)." *Id*. at 503. Consequently, on July 12, 2007, the parties filed a Joint Stipulation For Partial Dismissal of Plaintiffs' interest abatement claim (Compl. ¶ 12.F).

On September 17, 2007, the court issued an Order dismissing Plaintiffs' interest abatement claim and staying the case, pending appeal of *Keener I*. On January 13, 2009, and October 16, 2009, the stay was continued pending final appellate disposition in *Keener* and in *Prati* and its companion case, *Deegan* v. *United States*, No. 2008-5129.[6]

This case remained stayed until January 21, 2011, at which time the parties filed a Joint Status Report informing the court that the United States Supreme Court denied *certiorari* in *Prati* and *Deegan* and proposing different options for proceeding with the case.

On February 1, 2011, Plaintiffs filed a Motion To Transfer this case to the Honorable Charles F. Lettow for consolidation with 35 other cases under the caption of *Epps* v. *United States*, No. 06-615. On May 24, 2011, this Motion was denied.

On September 23, 2011, the Government filed a Motion To Dismiss ("Gov't Mot.") the remaining statute of limitations and penalty interest claims, pursuant to RCFC 12(b)(1). On October 24, 2011, Plaintiffs filed a Response. On November 10, 2011, the Government filed a Reply ("Gov't Reply").

---

[5] Over the next three years this case was reassigned to three other judges of this court: on August 15, 2003, the case was assigned to the undersigned judge; on March 9, 2005, at the direction of the former Chief Judge, the case was assigned to the Honorable Victor J. Wolski; on April 19, 2006, the case was assigned to the Honorable Lawrence J. Block; and on May 9, 2006, the case was re-assigned to the undersigned judge. During this entire period, the case was stayed.
On January 5, 2007, the court issued an order again staying the case that was renewed on April 4, 2007, because of a pending decision of the United States Supreme Court in *Hinck* v. *United States*, No. 06-376.

[6] *Deegan* was selected as a "representative" companion case to *Prati I*, because it concerned "non-settling partners," *i.e.*, partners who did not execute a Form 870-P(AD), but were instead bound by stipulated decisions entered into with the IRS in Tax Court proceedings. *See Prati III*, 603 F.3d at 1303-04.

### III. DISCUSSION.

#### A. Jurisdiction.

The United States Court of Federal Claims has jurisdiction under the Tucker Act, 28 U.S.C. § 1491, "to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). The Tucker Act, however, is "a jurisdictional statute; it does not create any substantive right enforceable against the United States for money damages . . . the Act merely confers jurisdiction upon [the United States Court of Federal Claims] whenever the substantive right exists." *United States* v. *Testan*, 424 U.S. 392, 398 (1976) (citations omitted). Therefore, to pursue a substantive right under the Tucker Act, a plaintiff must identify and plead an independent contractual relationship, Constitutional provision, federal statute, and/or executive agency regulation that provides a substantive right to money damages. *Todd* v. *United States*, 386 F.3d 1091, 1094 (Fed. Cir. 2004) ("[J]urisdiction under the Tucker Act requires the litigant to identify a substantive right for money damages against the United States separate from the Tucker Act[.]"); *see also Fisher* v. *United States*, 402 F.3d 1167, 1172 (Fed. Cir. 2005) (*en banc*) ("The Tucker Act . . . does not create a substantive cause of action; in order to come within the jurisdictional reach and the waiver of the Tucker Act, a plaintiff must identify a separate source of substantive law that creates the right to money damages. In the parlance of Tucker Act cases, that source must be 'money-mandating.'" (citations omitted)).

The Tucker Act authorizes the United States Court of Federal Claims to adjudicate tax refund claims if a taxpayer has paid the full assessed federal tax liability and timely filed a refund claim with the IRS stating the grounds for the claim. *See* 28 U.S.C. § 1491(a); 26 U.S.C. §§ 6511(a), 7422(a); *see also Shore* v. *United States*, 9 F.3d 1524, 1526 (Fed. Cir. 1993) (holding that a tax refund claim must be dismissed if the "principal tax deficiency has not been paid in full"). Only if the claim is denied by the IRS and the taxpayer timely files suit, does the United States Court of Federal Claims have jurisdiction to adjudicate the tax refund claim. *See* 26 U.S.C. § 6532(a). However, "[n]o action may be brought for a refund attributable to partnership items[.]" 26 U.S.C § 7422(h).

The jurisdictional defects in the December 28, 2001 Complaint are discussed below.

#### B. Standing.

The United States Supreme Court has held that "the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." *Warth* v. *Seldin*, 422 U.S. 490, 498 (1975). Standing must be determined "as of the commencement of suit." *Rothe Dev. Corp.* v. *Dep't of Def.*, 413 F.3d 1327, 1334 (Fed. Cir. 2005). The party invoking federal jurisdiction bears the burden of establishing standing. *See Lujan* v. *Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). Specifically, "a plaintiff must show [that] it has suffered an 'injury in fact' that is . . . concrete and particularized and . . . actual or imminent, not conjectural or hypothetical; . . . the injury is fairly traceable to the challenged

action of the defendant; and . . . it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc.* v. *Laidlaw Envtl. Serv., Inc.*, 528 U.S. 167, 180-81 (2000) (citations omitted).

The December 28, 2001 Complaint in this case alleges that Plaintiffs have suffered an "injury in fact" that is concrete and particularized, traceable to the IRS's actions, and redressable by a favorable decision. *See* Compl. ¶¶ 7-13. Accordingly, Plaintiffs have standing to seek an adjudication of the claims alleged in their Complaint, assuming this court has jurisdiction over those claims.

### C. Standard Of Review Under RCFC 12(b)(1).

A challenge to the United States Court of Federal Claims' "general power to adjudicate in specific areas of substantive law . . . is properly raised by a [Rule] 12(b)(1) motion[.]" *Palmer* v. *United States*, 168 F.3d 1310, 1313 (Fed. Cir. 1999); *see also* RCFC 12(b)(1) ("Every defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required. But a party may assert the following defenses by motion: (1) lack of subject-matter jurisdiction[.]"). In determining whether to dismiss a complaint for lack of subject matter jurisdiction, the court is "obligated to assume all factual allegations to be true and to draw all reasonable inferences in plaintiff's favor." *Henke* v. *United States*, 60 F.3d 795, 797 (Fed. Cir. 1995). Nonetheless, the plaintiffs still bear the burden of establishing jurisdiction by a preponderance of the evidence. *See Reynolds* v. *Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988) ("[O]nce the [trial] court's subject matter jurisdiction [is] put in question . . . . [the plaintiff] bears the burden of establishing subject matter jurisdiction by a preponderance of the evidence.").

### D. Whether The United States Court Of Federal Claims Has Jurisdiction To Adjudicate The Remaining Claims Alleged In The December 28, 2001 Complaint.

#### 1. The Government's Argument.

The Government argues that the remaining claims alleged in the December 28, 2001 Complaint are "indistinguishable" from those at issue in *Keener II* and *Prati III*. Gov't Mot. at 1-6. Therein, the United States Court of Appeals for the Federal Circuit held that the United States Court of Federal Claims does not have jurisdiction, under 26 U.S.C. § 7422(h), to adjudicate a partner-level refund suit alleging that: (1) the IRS assessed taxes after the statute of limitations period expired or (2) an assessment of penalty interest under 26 U.S.C. § 6621(c) was improper, because a partner's underpayment of federal taxes was not attributable to a tax motivated transaction. *See Prati III*, 603 F.3d at 1307, 1309; *see also Keener II*, 551 F.3d at 1363, 1367. Therefore, *Keener II* and *Prati III* foreclose the court from exercising jurisdiction over the statute of limitations and penalty interest claims alleged in the December 28, 2001 Complaint. Gov't Mot. at 4.

    2.    **Plaintiffs' Response.**

Plaintiffs respond that *Keener II* is distinguishable because the statute of limitations and penalty interest holdings in that case relied on concessions made by the *Keener* plaintiffs that were not made here.  Pl. Resp. at 6; *see also Alpha I, L.P. ex rel. Sands* v. *United States*, 89 Fed. Cl. 347, 359 (2009) (distinguishing *Keener II*'s penalty interest holding on the grounds that the *Alpha I* plaintiffs "did not concede the ground that the transactions at issue were shams").

Likewise, *Prati III*'s penalty interest holding is also distinguishable, because that analysis "is reasonable only if . . . there was a 'determination that the partnership's transactions were tax motivated[.]'"  Pl. Resp. at 7 (quoting *Prati III*, 603 F.3d at 1306).  Such a determination would require this court to find that a "sham transaction" disallowance is "inseparable" from the other asserted grounds for disallowance in the FPAA, which is not true in this case.  Pl. Resp. at 7-10. Furthermore, the TMP's affidavit states that "[t]he IRS sought to have me concede the transactions were shams.  I refused."  Pl. Resp. Ex. 1 at 3-4 (the "Behrens Affidavit").  This establishes that the TMP did not concede that USB-1985 Associates' transactions were sham transactions.  Pl. Resp. at 10-11.

The core of Plaintiffs' argument, however, is that the court should adopt the *res judicata*-based analysis applied in *Duffie* v. *United States*, 600 F.3d 362, 386 (5th Cir. 2010) (holding that an AMCOR partnership's partnership-level Tax Court decision was "*res judicata* with respect to the partnership items" so the trial court did not have subject matter jurisdiction "to review substantive issues relating to the interest assessment under Section 6621(c) because the interest assessment is attributable to a partnership item" resolved by the Tax Court).  In *Keener II* and *Prati III*, however, the United States Court of Appeals for the Federal Circuit did not address the issue of whether, under principles of *res judicata*, a limited partner is bound by a Tax Court decision that was agreed to by the TMP.  Pl. Resp. at 13.  Therefore, "those decisions are not precedent . . . in this subsequent case in which *res judicata* [is at issue]."  Pl. Resp. at 23 (citing *Nat'l Cable Television Ass'n, Inc.* v. *Am. Cinema Editors*, 937 F.2d 1572, 1581 (Fed. Cir. 1991) ("When an issue is not argued or is ignored in a decision, such decision is not precedent to be followed in a subsequent case in which the issue arises.")).[7]

Plaintiffs conclude that when the proper *res judicata* analysis is applied, as a matter of law, they cannot be bound by the partnership-level Tax Court Stipulated Decision, either as to the statute of limitations claim or penalty interest claim.  Pl. Resp. at 13, 21-28 (penalty interest claim analysis), 28-39 (statute of limitations claim analysis).

---

[7] In addition, Plaintiffs argue that "[t]here have been significant changes in the law since *Prati* [*I*], [*II*], and even [*III*] were briefed and/or issued" that "impact[] one or more elements of a *res judicata* analysis."  Pl. Resp. at 12 (citing *Jade Trading, LLC* v. *United States*, 598 F.3d 1372, 1380 (Fed. Cir. 2010) (holding that a partnership-level court does not have jurisdiction to determine a non-partnership item); *Henderson* v. *Shinseki*, 131 S. Ct. 1197, 1206 (2011) (holding that the 120-day deadline to file a notice of appeal with the United States Court of Appeals for Veterans Claims is not jurisdictional); *United States* v. *Tohono O'Odham Nation*, 131 S. Ct. 1723, 1730 (2011) (stating that "[c]ourts should not render statutes nugatory through construction")).

### 3. The Government's Reply.

The Government replies that it is improper to distinguish *Keener II* based on concessions made by the *Keener* plaintiffs, because the holding of the United States Court of Appeals for the Federal Circuit therein did not depend on those concessions. Gov't Reply at 2. Likewise, *Alpha I*, 89 Fed. Cl. 347, is not applicable because that case was a *partnership-level* proceeding without a prior determination that the transactions at issue lacked economic substance. *See id.* at 349, 359. Indeed, requiring a concession by Plaintiffs that the FPAA determinations were not altered by their settlement agreement with the IRS would "vitiate § 7422(h)." Gov't Reply at 3.

Likewise, the Government contends that Plaintiffs' argument that the FPAA cannot be a basis for a penalty interest assessment because the FPAA cites multiple grounds for disallowance, cannot prevail since both *Keener II* and *Prati III* rejected this view. *See Keener II*, 551 F.3d at 1367; *see also Prati III*, 603 F.3d at 1308; *Schell* v. *United States*, 589 F.3d 1378, 1384 (Fed. Cir. 2009) (same). Moreover, there is no doctrine requiring this court to determine whether the FPAA's multiple grounds for disallowance are separable before determining whether *Keener II* and *Prati III* govern the disposition of this issue. Gov't Reply at 5.

Finally, the Government argues that *res judicata* is irrelevant, because the United States Court of Appeals for the Federal Circuit held in *Prati III* and *Keener II* that 26 U.S.C. § 7422(h) bars the court from adjudicating claims like the remaining claims alleged in the December 28, 2001 Complaint. Gov't Reply at 6. Moreover, Plaintiffs' interpretation of *Duffie* is incorrect; *Duffie* did not link its *res judicata* analysis to its jurisdictional analysis, but held that the trial court had no jurisdiction under *either* basis. *See Duffie*, 600 F.3d at 372-84. Likewise, *Jade Trading* did not apply a *res judicata* analysis, but instead held that the trial court did not have jurisdiction to adjudicate the plaintiff's claims under 26 U.S.C. § 6226(f). *See Jade Trading*, 598 F.3d at 1378-80. Similarly, Plaintiffs attempt to "transmogrif[y]" the United States Supreme Court's "limited" opinions in *Henderson* and *Tohono O'Odham*, by extending them beyond their specific statutory contexts. Gov't Reply at 7-8.

### 4. The Court's Resolution.

#### a. The United States Court Of Appeals For The Federal Circuit's Decisions In *Keener II* And *Prati III*.

Section 7422(h) of the Internal Revenue Code provides that "[n]o action may be brought for a refund attributable to partnership items,"[8] subject to two exceptions not applicable here.

---

[8] The Internal Revenue Code defines "partnership item" as "any item required to be taken into account for the partnership's taxable year under any provision of subtitle A to the extent regulations prescribed by the Secretary provide that, for purposes of this subtitle, such item is more appropriately determined at the partnership level than at the partner level." 26 U.S.C. § 6231(a)(3). In contrast, an "affected item" is "defined by statute as 'any item to the extent such item is affected by a partnership item,' . . . [and] includes both a partnership-level component (requiring partnership-level determinations) and a partner-level component (requiring partner-level determinations)." *Keener II*, 551 F.3d at 1366 (quoting 26 U.S.C. § 6231(a)(5)).

The United States Court of Appeals for the Federal Circuit has twice considered whether this court has jurisdiction, pursuant to Section 7422(h), to consider statute of limitations and penalty interest claims in a partner-level refund suit and has determined in each instance that this court does not.[9]

Regarding the statute of limitations claims, the United States Court of Appeals for the Federal Circuit unambiguously has held that "the statute of limitations issue is a partnership item . . . that [the plaintiffs] were required to raise . . . in the partnership-level proceeding prior to either entering settlement or stipulating to judgment in the Tax Court." *Prati III*, 603 F.3d at 1307; *see also Keener II*, 551 F.3d at 1363 (same). In *Keener II*, our appellate court rejected those plaintiffs' argument that the term "partnership item" could only include items found in subtitle A of the Internal Revenue Code, holding that the statute was ambiguous as to whether items outside of subtitle A could be included in the statutory definition of "partnership item." *Keener II*, 551 F.3d at 1362-63. Next, the Court held that Treas. Reg. § 301.6231(a)(3)-1(b)'s definition of "partnership item"[10] was reasonable and therefore subject to deference under the United States Supreme Court's decision in *Chevron, U.S.A., Inc.* v. *Natural Res. Def. Council, Inc.*, 467 U.S. 837 (1984). *See Keener II*, 551 F.3d at 1363. Since the *Keener* plaintiffs "d[id] not dispute," as a matter of law, that their statute of limitations claim was a "partnership item" under Treas. Reg. § 301.6231(a)(3)-1(b), the United States Court of Federal Claims was held not to have jurisdiction over those plaintiffs' statute of limitations claim in a partner-level proceeding. *Id*. Moreover, in *Prati III*, the United States Court of Appeals for the Federal Circuit, rejected the *Prati* plaintiffs' attempt to distinguish *Keener II* on the ground that their statute of limitations claim was governed by 26 U.S.C. § 6501, instead of 26 U.S.C. § 6229, because the two sections "operate in tandem to provide a single limitations period." *Prati III*, 603 F.3d at 1307.

As for penalty interest claims, the United States Court of Appeals for the Federal Circuit has held that "the nature of a partnership's transactions – and, specifically, whether a partnership's transaction is a 'sham' – is a partnership item," and therefore the United States Court of Federal Claims does not have jurisdiction over a partner-level claim disputing the nature of a partnership transaction. *See Keener II*, 551 F.3d at 1366; *see also Prati III*, 603 F.3d at 1308 (same). In *Keener II*, as is the case here, the FPAAs issued by the IRS listed several reasons for disallowance, including that "'[t]he partnership's activities constitute[d] a series of sham transactions.'" 551 F.3d at 1365 (quoting the *Keener* FPAA) (alterations in original). The *Keener* plaintiffs settled with the IRS using a Form 870-P(AD) that did not mention the sham finding, but the Form 870-P(AD) did warn that a settlement "'may result in an additional tax liability to [Taxpayers] plus interest as provided by law.'" *Id.* (quoting the *Keener* Form 870-

---

[9] In addition, in *Keefe* v. *United States*, 407 Fed. App'x 420, 420 (Fed. Cir. 2010) (non-precedential), the United States Court of Appeals for the Federal Circuit summarily affirmed the dismissal of 53 AMCOR-related cases alleging statute of limitations and penalty interest claims.

[10] The IRS defines "partnership item" to include "the legal and factual determinations that underlie the determination of the amount, timing, and characterization of items of income, credit, gain, loss, deduction, etc." Treas. Reg. § 301.6231(a)(3)-1(b)).

P(AD)) (alterations in original). The appellate court reasoned that "the applicability of [26 U.S.C.] § 7422(h) turns on whether Taxpayers' refund claims are 'due to, caused by, or generated by' a partnership item." *Id*. (quoting *Electrolux Holdings, Inc.* v. *United States*, 491 F.3d 1327, 1330-31 (Fed. Cir. 2007)). The *Keener* plaintiffs' contention that their underpayments were not attributable to a tax motivated transaction, in fact, was an attempt to have their transactions not deemed shams. *Id*. As such, this argument concerned the characterization of the partnership's transactions, and the "characterization of a partnership's transaction is a partnership item" over which the United States Court of Federal Claims does not have jurisdiction in a partner-level suit. *Id*. at 1365-66.[11]

In *Prati III*, the United States Court of Appeals for the Federal Circuit also rejected the contention that the settlement agreements "must be deemed to have incorporated all of the grounds listed in the FPAA," and penalty interest should not be imposed when an underpayment is not "solely attributable" to a tax motivated transaction, pursuant to Treas. Reg. § 301.6621-2T, A-5. *See Prati III*, 603 F.3d at 1308. This argument was described as "inherently a dispute over the proper characterization of the partnerships' transactions" over which the United States Court of Federal Claims does not have jurisdiction. *Id*. In addition, our appellate court held that any argument based on the fact that the Form 870-P(AD) settlement agreements did not include any determination as to the nature of the partnerships' transaction, was barred by 26 U.S.C. § 7422(h) "[t]o the extent [plaintiffs] are disputing the finding that those transactions were tax motivated." *Id*.

---

[11] The United States Court of Appeals for the Federal Circuit addressed three additional arguments in *Keener II*. First, the Court analyzed whether plaintiffs should be allowed to challenge the penalty interest assessment, because it is an "affected item" not subject to 26 U.S.C. § 7422(h)'s jurisdictional bar. *See Keener II*, 551 F.3d at 1366. The appellate court rejected this argument, holding that 26 U.S.C. § 7422(h) bars refund claims *attributable* to partnership items, *i.e.*, not just to partnership items, and the plaintiffs had "only challenge[d] a partnership-level component of this affected item." *See id*. at 1366-67. In addition, the appellate court rejected the "oblique[]" suggestion that *Keener II* was the same as a case in which no partnership-level determination was made, instead holding that the FPAAs disallowed the deductions on sham transaction grounds and the taxpayers had conceded that the FPAAs were not altered by the Form 870-P(AD) settlements. *See id*. at 1367. Finally, the appellate court rejected the argument that it was impossible to determine whether the underpayments were attributable to a tax motivated transaction given that the FPAAs stated several grounds for disallowance. *Id*. After observing that it only "assum[ed]" it would have jurisdiction over this argument, the Court opined that it would be "inequitable" if penalty interest were to be imposed "when a deduction is disallowed because the partnerships' transactions were tax motivated," but not imposed "when that deduction is also disallowable on other inseparable grounds." *Id*.

      **b.**      **The United States Court Of Federal Claims Does Not Have Jurisdiction Over The Remaining Claims In The December 28, 2011 Complaint.**

In this case, Plaintiffs attempt to distinguish *Prati III* and *Keener II* by asserting that these cases are not controlling precedent. The court rejects this argument.

The statute of limitations claim in this case is the same as those in *Prati III* and *Keener II*. Nevertheless, Plaintiffs assert that the taxpayers in *Keener II* made three concessions that are not in the record of this case. Two of the "concessions" in *Keener II* were that the statute of limitations claim "must be taken into account for the partnership's taxable year" and is "more appropriately determined at the partnership level." *Keener II*, 551 F.3d at 1362-63. The court does not consider these contentions to be admissions of fact in the usual context of litigation, but simply part of the *Keener* plaintiffs' interpretation of the Internal Revenue Code's definition of "partnership item." *See id*. Therefore, adjudication of that issue is foreclosed, as the IRS regulation's definition of "partnership item" has been held to be permissible by our appellate court. *See id.* at 1363. The other nominal "concession" in *Keener II* was that those plaintiffs "d[id] not dispute" that the IRS regulation included statute of limitations considerations within the definition of "partnership item." *Id.* at 1362. The court agrees with *Keener I*, however, that the statute of limitations claim in this case "involves a partnership item, preventing those arguments from being considered here." *Keener I*, 76 Fed. Cl. at 460; *see also Weiner* v. *United States*, 389 F.3d 152, 157 (5th Cir. 2004) ("[T]he treasury regulations have implicitly included the statute of limitations determination within the definition of 'partnership item.'"); *cf. Keener II*, 551 F.3d at 1363 (observing that "legion[s] of other courts . . . have found that this limitations claim cannot be raised in a partner-level proceeding" (internal quotation marks omitted)). Indeed, Plaintiffs have not presented any argument as to *why* their statute of limitations claim is not subsumed by the IRS regulation's definition of "partnership item."

In this case, Plaintiffs' effort to distinguish their penalty interest claim also fails. Plaintiffs argue that *Prati III* and *Keener II* require the court to determine that the multiple grounds for disallowance recited in the FPAA are inseparable from the sham transaction finding. There is no support whatsoever for Plaintiffs' contention that these cases require the court to make such a finding. Plaintiffs rely on the use of the word "inseparable" in *Keener II* dicta that only assumed jurisdiction *arguendo*. *See Keener II*, 551 F.3d at 1367; *see also Alpha I*, 89 Fed. Cl. at 358-59 (characterizing the comment in *Keener II* as dictum). Moreover, as *Prati III* stated, "the IRS's inclusion of additional grounds for disallowance of [the plaintiffs'] deduction d[oes] not somehow undermine its determination that the transactions at issue were tax motivated." *Prati III*, 603 at 1306 (summarizing the holding in *Keener II*); *see also Schell*, 589 F.3d at 1384 ("[T]hat the FPAAs listed 'sham transaction' as one of several grounds for disallowing partnership deductions does not, as the Taxpayers suggest, render the FPAAs less conclusive." (citing *Keener II*, 551 F.3d at 1366)). Therefore, Plaintiffs' inseparability argument is nothing more than a restatement of an argument rejected in *Prati III* that the "underpayments were not 'solely attributable' to tax-motivated transactions." *Prati III*, 603 at 1308. As such, Plaintiffs' inseparability argument is "inherently a dispute over the proper characterization of the partnership['s] transactions[] that . . . is barred by section 7422(h) from being litigated in [a partner-level] refund action before the Court of Federal Claims." *Id*.

Finally, Plaintiffs devote the majority of their brief to arguing that the court should apply a *res judicata*-based analysis, discussed by the United States Court of Appeals for the Fifth Circuit in *Duffie*, and rule that Plaintiffs are not bound by the prior Tax Court proceeding. There are two dispositive reasons why the court need not apply the doctrine of *res judicata*. First, *Duffie* is not binding precedent; *Prati III* and *Keener II* are.[12] Second, Plaintiffs' Form 870-P(AD) Settlement Agreement governs how partnership items will be treated regarding Plaintiffs' tax liability, not the Tax Court Stipulated Decision. *See* 26 U.S.C. § 6224(c)(1) ("A settlement agreement between the Secretary or the Attorney General . . . and 1 or more partners in a partnership with respect to the determination of partnership items for any partnership taxable year shall (except as otherwise provided in such agreement) be binding on all parties to such agreement with respect to the determination of partnership items for such partnership taxable year."); *see also Schell*, 589 F.3d at 1382 ("When a partner chooses to settle his individual tax liability with the IRS, that partner would no longer participate in the partnership level proceeding, and instead would be bound by the terms of his settlement agreement."). In fact, Plaintiffs' Form 870-P(AD) states that "the treatment of partnership items under this agreement will not be reopened in the absence of fraud, malfeasance, or misrepresentation of fact; and no claim for refund or credit based on any change in the treatment of partnership items may be filed or prosecuted." Pl. Resp. Ex. 5 at 53. Therefore, whether Plaintiffs should be bound by the Tax Court action is irrelevant to the "partnership item" determinations made as to their tax liability.[13]

---

[12] Plaintiffs' argument that, "because *res judicata* was either not argued or ignored in *Keener* [*II*] and *Prati* [*III*], those decisions are not precedent to be followed in this subsequent case in which *res judicata* [is raised]," also is without merit. *See* Pl. Resp. at 23 (citing *Nat'l Cable Television Ass'n*, 937 F.2d at 1581). The proposition set forth in *National Cable Television* is simply that, "[w]hen an *issue* is not argued or is ignored in a decision, such decision is not precedent to be followed in a subsequent case in which the *issue* arises." *Nat'l Cable Television Ass'n*, 937 F.2d at 1581 (emphasis added). In this case, the United States Court of Appeals for the Federal Circuit has squarely addressed the issues presented. Where our appellate court announces a rule that decides a case, the court is not at liberty to disregard that precedent.

As for Plaintiffs' reliance on *Henderson*, *Tohono O'Odham*, and *Jade Trading* as "significant changes in the law since *Prati* [*I*], [*II*], and even [*III*] were briefed and/or issued" (Pl. Resp. at 12), those decisions were only argued to apply in this case through Plaintiffs' proposed *res judicata* analysis, and do not, on their own, require the court to examine their effect on *Prati III* and *Keener II*.

[13] For the same reasons, the Behrens Affidavit attesting to Mr. Behrens' intent when entering into the Stipulated Decision in the Tax Court case is irrelevant as to the legal effect of the Plaintiffs' Settlement Agreement with the IRS.

**IV.     CONCLUSION.**

For the foregoing reasons, the Government's September 23, 2011 Motion To Dismiss the statute of limitations (Compl. ¶¶ 12.A-B) and penalty interest claims (Compl. ¶¶ 12.C-E), pursuant to RCFC 12(b)(1), is granted.  Accordingly, the Clerk of the Court is directed to enter final judgment, dismissing the December 28, 2001 Complaint for lack of subject matter jurisdiction.

**IT IS SO ORDERED.**

                                                                         s/ Susan Braden
                                                                         **SUSAN G. BRADEN**
                                                                         **Judge**